**Kathy J. GASAWAY, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 82A04-8904-CR-134.

Court of Appeals of Indiana, Fourth District.

Dec. 27, 1989.

Rehearing Denied Feb. 6, 1990.

David M. Shaw, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Judge.

Defendant–Appellant Kathy K. Gasaway (Gasaway) appeals her conviction for Involuntary Manslaughter, a class C felony, IND.CODE 35–42–1–4, and Neglect of a Dependent, a class B felony, IND.CODE 35–46–1–4.

We affirm.

Gasaway presents four issues for our review, which we restate as:

1. whether the trial court erred in denying Gasaway's motion to dismiss newly filed Count III;

2. whether the prosecutor's alleged misstatements of fact and use of a poem coordinated with autopsy slides warranted a mistrial;

3. whether the prosecutor's misstatement of the law warranted a mistrial; and

4. whether convictions for both involuntary manslaughter and neglect of a dependent were improper.

In the summer of 1987, Gasaway separated from her husband. She and her thirteen month old child, Christopher, moved in with Chavez Fischer and his son. On July 10, 1987, Gasaway brought Christopher into the emergency room of Welborn Hospital, stating he had been injured in a fall. Hospital personnel noted Christopher was not breathing and had no pulse. Efforts to resuscitate him were unsuccessful.

Christopher had numerous injuries. He had nine broken ribs, which were at least a week old, severe trauma to his head, limbs, and abdomen, and several internal injuries. Some of the bruises indicated application of force by a cylindrical object. He also had severe burn marks on his back indicating the possibility that an instrument like a hot iron had been used on him. A pathologist testified some injuries were up to seven to ten days old while others were more recent. It was the pathologist's opinion a combination of recent injuries caused Christopher's death.

On July 14, 1987, an information was filed which charged Gasaway with Count I, Murder and Count II, Neglect of a Dependent. Count I alleged Gasaway committed murder "by striking at and against the body of the said Christopher L. Gasaway thereby causing him to die, all in violation of I.C. 35–42–1–1." (R. 8). Count II alleged Gasaway "did knowingly place a dependent child ... in a situation that endangered his life and health ... which resulted in serious bodily injury to the said Christopher L. Gasaway, all in violation of I.C. 35–46–1–4." (R. 9). An initial hearing was held on July 15, 1987, and an omnibus date was set for September 25, 1987.

On September 11, 1987, Gasaway filed a motion to dismiss Count II pursuant to IND.CODE 35–34–1–4(a)(4), which allows dismissal when "[t]he indictment or information does not state the offense with sufficient certainty." Gasaway's motion "pray[ed] that Count II be dismissed or, alternatively, the Court grant leave to the prosecutor to amend pursuant to I.C. 35–4–1–4(d) and (e)." (R. 19). On September 30, 1987, the trial court granted Gasaway's motion and gave the State until October 12,

1987, to amend the information. On October 12, the State filed Count III, Murder, stating Gasaway "did knowingly kill Christopher Gasaway ... by knowingly placing a dependent child ... in a situation that endangered his life and health ... which failure resulted in his death." (R. 24).

Gasaway filed a motion to dismiss Count III, but the motion was denied. During the trial, however, the trial court partially sustained the motion to dismiss Count III, stating:

> The Court now finds as that charge is constituted and worded, that it in effect, constitutes a charge of Neglect of a Child [sic], a Class B felony. The Court therefore sustains the motion to that degree, so that the information will consist of Count A, a charge of murder as set out in the charging information, and Count B, a charge of Neglect of a Child [sic], a Class B Felony....

(R. 378).

Gasaway contends the trial court erred in allowing the amendment because IND. CODE 35–34–1–5(b) only allows an amendment of substance at any time up to thirty days before the omnibus date. Gasaway points out that the omnibus date was September 25, 1987, and Count III was not filed until October 12, 1987, well after the statutory deadline. However, we note Gasaway's motion to dismiss Count II, which precipitated the amendment, was itself filed well past the deadline of IND.CODE 35–34–1–4(b), which states a motion to dismiss must be made no later than twenty days prior to the omnibus date.

■ The deadline of I.C. 35–34–1–5(b) was unattainable because of Gasaway's tardy motion to dismiss. Gasaway expressly consented to, and requested in its motion, the very procedure followed by the trial court and the State. Furthermore, the allowance of the amendment was not outcome determinative. Before the amendment was filed, Gasaway was charged with one count of murder and one count of neglect. After the amendment was filed and the motion to dismiss was partially sustained, Gasaway was still charged with one count of murder and one count of

neglect, albeit a better defined count of neglect. Thus, the trial court's error in allowing the belated amendment, as a result of its error in allowing Gasaway's belated motion to dismiss, did not prejudice any of Gasaway's substantial rights. We cannot reverse absent prejudicial error. *Sharp v. State* (1989), Ind., 534 N.E.2d 708, 714. *See also Kindred v. State* (1989), Ind., 540 N.E.2d 1161, 1170. (Court does not need to address untimeliness of amendment when defendant has not demonstrated sufficient harm).

■ Gasaway also argues certain alleged misstatements of fact in the prosecutor's opening statement and final argument warrant the grant of her motion for mistrial. The record reveals that although Gasaway made motions for mistrial at the close of each, she made no objection to the alleged misstatements when they were made. Failure to make timely objections constitutes waiver of error. *Sutton v. State* (1986), Ind.App., 495 N.E.2d 253, 259, *reh. denied, trans. denied.*

Gasaway next contends the trial court erred in denying her motion for mistrial regarding the prosecutor's recitation of a poem, coordinated with the showing of autopsy slides, during final argument. Gasaway argues the prosecutor's argument was misconduct and she was placed in grave peril because the argument was an attempt to inflame the passions and prejudices of the jury. The trial record reveals the following exchange:

> [PROSECUTOR, MR. ZOSS:] I just ask you, and I'll alert Mr. Shaw to the fact that I'm going to use the slides. I'll use five more minutes of my closing argument. I would just like you to listen to his [sic], if you could:
>
> Christopher Gasaway has died;
>
> Yes, little Chris is dead.
>
> Burned and beaten
>
> [State's Exhibit No. 29, (a slide of the deceased's face), is shown to the jury.]
>
> MR. SHAW: Your Honor, I'm going to object to a poetry reading. I think that is blatant appeal to the....

THE COURT: Counsel approach the bench, please.

MR. SHAW: Would you show that the defendant objects to Mr. Zoss' improper attempt to appeal to the passions and prejudices of the jury.

THE COURT: Show the objection overruled. Continue please.

MR. ZOSS: Thank you.

(SIDE BAR DISCUSSION IS HELD, UPON CONCLUSION OF THE SAME, THE RECORD IS RESUMED.)

CLOSING ARGUMENT BY MR. ZOSS, DEPUTY PROSECUTION ATTORNEY CONTINUES:

Christopher Gasaway has died;

yes, little Chris is dead.

Burned and beaten, literally,

from the soles of his feet, to the top of his head.

Pursuing one man while, yet married to another;

Kathy, lying to everyone; her husband, her sisters, her brother.

When faced with devastation, running from old and rejected by new.

She struck out in rage;

angry red turned to black and blue.

Murdered by mommy, who was entrusted to care,

but no one said his life would be long or his death would be fair.

Christopher Gasaway has died;

yes, little Chris is dead.

But no matter, she can always have more.

[During the poem, 10 or 11 autopsy slides were shown to the jury, which included State's Exhibit Nos. 29, 19, 4, 1, 5, 8, 12, 13, and 14.]

HEARING HELD OUTSIDE THE PRESENCE OF THE JURY:

MOTION FOR MISTRIAL BY COUNSEL FOR THE DEFENDANT BEGINS:

MR. SHAW: The defendant moves for a mistrial based upon the prosecutor's poem and slide presentation, which was a blatant appeal to the emotions, prejudices and passions of the jury.

THE COURT: Motion overruled.

(R. 490–497).

The trial judge who initially rules on a motion for mistrial is in a more advantageous position than a reviewing court to determine the impact of allegedly inflammatory or prejudicial statements. The trial court is therefore given significant discretion in its ruling. *Stacker v. State* (1976), 264 Ind. 692, 348 N.E.2d 648, 651.

We note Gasaway's objection was directed to the reading of the poem and not the showing of the slide presentation. The motion for mistrial was directed to both the poem and the slide presentation. Under the reasoning of *Sutton, supra,* failure to object to the slides at the time they were shown waives any error by the trial court in allowing them. However, because of the importance of considering the possible prejudicial effect of the poem within its context, we will not ignore the fact the reading of the poem was coordinated with the showing of the slides.

Our supreme court has held the procedure for deciding a claim of prosecutorial misconduct consists of two steps. *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843, 848. First, the court must determine whether the prosecutor in fact engaged in misconduct. Determination is made by reference to case law and the disciplinary rules of the Code of Professional Responsibility. Then, the court must consider whether the misconduct, under all circumstances, placed the defendant in a position of grave peril to which she should not have been subjected.

It is misconduct to phrase final argument in a manner calculated to inflame the passions or prejudices of the jury. *Limp v. State* (1982), Ind., 431 N.E.2d 784, 788. Misconduct has been found when the prosecutor stressed the jurors' right to be safe in their own homes and asked one juror if he wanted his wife raped. In finding misconduct, the court held the prosecutor was appealing to the jurors' fears, and asking them to convict the defendant because he was dangerous, not because he was guilty. *Johnson v. State* (1983), Ind.App., 453 N.E.2d 365, 369. Thus, the danger inher-

ent in inflammatory conduct is that the jury, because it is fearful, angry, or controlled by other emotions, will find guilt no matter what the evidence of the case may indicate. This court must therefore focus on the probable effect the prosecutor's actions would have on the jury's ability to judge the evidence fairly. *U.S. v. Dominguez* (7th Cir.1987), 835 F.2d 694, 699, *cert. denied,* (citing *U.S. v. Zanin* (7th Cir.1987), 831 F.2d 740, 742). This focus is necessarily fact sensitive and entails a consideration of grave peril; therefore, the two step approach of *Maldonado, supra,* blends into one.

Our adversary system permits a prosecutor to prosecute with "earnestness and vigor." *Berger v. United States* (1935), 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314. In so doing, "hard blows" cannot be avoided. *Id.* The line between acceptable and improper advocacy is not easily drawn; the question is whether the defendant was deprived of a fair trial. *United States v. Young* (1985), 470 U.S. 1, 7, 105 S.Ct. 1038, 1042, 84 L.Ed.2d 1; *United States v. Dominguez, supra.*

■ The prosecutor's actions in this case did not constitute misconduct nor place Gasaway in grave peril denying her a fair trial. During the trial, the jury heard extensive testimony and evidence relating to Christopher's death, including a view of the slides used by the prosecutor in connection with his poem. Next, the prosecutor's poem made no substantial reference to matters not in evidence. Because the presentation of the two in combination was admittedly innovative is no reason to reject it as a denial of due process for that reason alone. This constitutes only a *Berger* "hardblow" by an advocate charged to do so on behalf of his client, here the State. In our adversary system, final argument is an eminently appropriate time for lawyers to advocate on behalf of their clients' causes. Clearly, the prosecutor was doing so here. That his presentation did not inflame the jury is obvious: Gasaway was convicted of Involuntary Manslaughter, not Murder.

Gasaway further argues the trial court erred in overruling her objection to the following misstatement of law by the prosecutor:

[PROSECUTOR, MR. ZOSS:] ... The law is that a person intends a natural consequences [sic] of their [sic] actions, probable consequences. If I take out a gun, and I am shooting at someone, and the person gets hit and they die, I can't say it was an accident, because I was only intending on winging them or was only intending on firing a warning shot. You intend the natural consequences of your action.

MR. SHAW: Your Honor, I object, because that statement is an inaccurate statement of the law. One can simply infer from the act of shooting that a person intended it, but it is a defense that the person did not intend to hit the purposes [sic].

THE COURT: This is argument. You may continue.

... The State does not have to prove that intention. A person is inferred or presumed to attend [sic] the natural consequences of their act.

MR. SHAW: Your Honor, that is a misstatement of the law.

THE COURT: The jury is aware of the fact that I will instruct them as to the law, and that arguments as to the law are just merely part of counsel's argument, and is [sic] to be considered that, and must look to the Court relative to the instructions as to what the law of the State of Indiana is. Continue, Mr. Zoss.

(R. 518–519).

In support of her argument, Gasaway cites *Sandstrom v. Montana* (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 and *Jacks v. State* (1979), 271 Ind. 611, 394 N.E.2d 166, wherein the jury was instructed the law presumes a person intends the natural consequences of his acts. Gasaway argues that in both cases, the court held the instruction was error because it could be understood as shifting the burden of persuasion to the defendant on the ele-

ment of intent.[1] Gasaway further argues the prosecutor's misstatement is equivalent to an erroneous instruction.

Incorrect statements of law, although not evidence, can be cured by a proper instruction in the same manner as the erroneous admission of evidence may be cured. *Reliford v. State* (1982), Ind., 436 N.E.2d 313, 315; *Jacks, supra,* 394 N.E.2d at 175. Here, the State notes the court instructed the jury:[2]

The law does not require a direct statement of intent by a defendant in order to prove the intent to commit a particular crime.

You may infer from all the surrounding circumstances what the intent of the defendant was at the time an act if any was committed.

(R. 560).

▌ The instruction cures the prosecutor's misstatement because it emphasizes intent is drawn from all circumstances. Thus, the jurors were informed that the presumption of intent outlined by the prosecutor was not mandatory; intent is derived from an examination of all circumstances.

Finally, Gasaway argues it was error to convict and sentence her for both Involuntary Manslaughter and Neglect of a Dependent. Gasaway contends both verdicts are supported by the same facts and the same acts, and it was improper for separate, consecutive sentences to be imposed. *Howard v. State* (1985), Ind., 481 N.E.2d 1315, 1318; *Smith v. State* (1980), Ind. App., 408 N.E.2d 614, 622. In *Howard,* our supreme court held Howard could not be convicted on both neglect and battery charges. The court emphasized no proof of additional facts was necessary to prove the perpetration of either offense. The convictions were based upon a one day episode of

abuse resulting in injury to the child. *Id.* In *Smith,* the court held the defendant could not be convicted of neglect of a dependent and involuntary manslaughter because the acts necessary to convict her of neglect were the very same acts necessary to convict her of involuntary manslaughter. *Smith, supra,* at 622.

Gasaway also cites to *Hall v. State* (1986), Ind., 493 N.E.2d 433, as support for her argument. In *Hall,* the defendant parents were convicted and sentenced for reckless homicide and neglect of a dependent. Our supreme court held the factual basis alleged by the State in the information must be examined. *Id.* at 435. Both charges were based on the same act occurring on the same day. *Id.* at 436. The court held no additional facts were necessary to prove the perpetration of either offense and the convictions could not stand under the facts of the case because one offense was the instrument by which the other was committed. *Id.*

In the present case, Gasaway was charged with Count A, Murder and Count B, Neglect. Count A was based upon the injuries occurring on or about July 10, 1987, which caused the death of Christopher. Count B was based on the endangering of Christopher's life during the period of June 10, 1987, to July 10, 1987. The record indicates Christopher's injuries were in various stages of healing and were not all sustained at the same time. Some injuries were over a week old. The multiple injuries resulting in Christopher's death occurred during the last forty-eight hours of his life.

The facts of this case are similar to those of *Bean v. State* (1984), Ind., 460 N.E.2d 936, where our supreme court upheld the convictions of Raymond Bean for both neglect and involuntary manslaughter. The

**1.** Actually, in *Jacks* the instruction was cured because the court gave other instructions stating the natural consequences were presumed unless the circumstances were such as to indicate the absence of such intent. *Jacks, supra,* 394 N.E.2d at 175.

**2.** The State cited to two other instructions which cured the prosecutor's misstatement.

The manner in which the record is organized makes it difficult to determine which instructions were given and which were proposed but rejected. A notation on the instruction we examine stated "give as modified." Modification refers to the addition of the "if any" language to the second paragraph.

court distinguished *Smith, supra,* stating there was probative evidence of neglect resulting in injuries prior to the infliction of the injuries causing death. *Id.* at 943. Also, in *Hughes v. State* (1987), Ind.App., 508 N.E.2d 1289, 1301, the court held convictions for involuntary manslaughter and neglect were proper because there was evidence of injuries before the fatal blow was struck. The dual convictions were upheld even though some acts of neglect overlapped with acts included in a battery charge. *Id.*

Gasaway's convictions for both neglect and involuntary manslaughter were proper. Gasaway places importance on the fact the jury's general verdict did not make it clear whether she was convicted for involuntary manslaughter as the agent inflicting the injuries or as an accomplice. The result is the same whether the general verdict of manslaughter was based upon positive or passive acts causing death. The neglect charge was based on a pattern of neglect prior to the time the acts resulting in death occurred. Neglect resulted because Gasaway either failed to cease her abuse or failed to remove Christopher from the source of abuse prior to the infliction of the fatal injuries. The resulting manslaughter conviction was based upon injuries caused in the last two days of Christopher's life by Gasaway and/or someone else. In any case, the injuries resulting in death, although multiple, were separate from the injuries resulting from prior acts of neglect.

Affirmed.

GARRARD, P.J., concurs.

MILLER, J., concurs in result.