**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**HILARY BOWE RICKS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana



FILED

Feb 24 2012, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| UNDRAY D. WILSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 34A02-1012-PC-1389 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HOWARD SUPERIOR COURT
The Honorable Stephen M. Jessup, Judge
Cause No. 34D02-1011-PC-12

**February 24, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MAY, Judge**

Undray Wilson was convicted of murder[1] and our Indiana Supreme Court affirmed. He sought post-conviction relief alleging his trial counsel was ineffective because he did not seek to instruct the jury on lesser included offenses, did not challenge misconduct by the prosecutor, and did not investigate and locate additional witnesses. Wilson also argued appellate counsel was ineffective because he did not challenge the admission of certain evidence at trial. Post-conviction relief was denied, and we affirm.[2]

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to Wilson's conviction are:

> [S]hortly before noon on February 27, 2000, Wilson was standing on the front porch of his house when Richard Listenbee and his brother David Nesbitt drove by in a car. Listenbee was driving, and Nesbitt was seated in the passenger seat. The three men had been involved in a physical altercation two days earlier. The record shows the car drove past the house and turned into an alley. Intending to back up and confront Wilson, Listenbee removed a handgun from the glove compartment of the car. At that point, Wilson went into the house, retrieved his own weapon, returned to the porch, and began shooting at the car before it left the alley. Nesbitt then exited the car, fired one or two shots, and got back in the car. As the car sped away, Wilson ran off the porch into the middle of the street and fired several more shots. One of the bullets struck Nesbitt in the chest, and he died as a result.
>
> Wilson was arrested and charged with murder. After a jury trial, he was convicted as charged. The trial court sentenced Wilson to fifty-five years imprisonment.

*Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002). Wilson appealed, arguing the evidence was not sufficient to negate his claim of self-defense and the trial court should not have

---

[1] Ind. Code § 35-42-1-1.

[2] We heard oral argument October 19, 2011, at Oakland City University. We thank the University for its hospitality and commend counsel on the quality of their advocacy.

admitted a photograph into evidence. Our Supreme Court rejected those arguments and affirmed his conviction.

Wilson then sought post-conviction relief, alleging trial and appellate counsel were ineffective. The post-conviction court denied relief, and Wilson appeals that denial.

## DISCUSSION AND DECISION

The standard of review in appeals from post-conviction negative judgments is well-established. A party appealing from such a negative judgment must establish the evidence is without conflict and, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision. *Conner v. State*, 711 N.E.2d 1238, 1244 (Ind. 1999). The reviewing court accepts the trial court's findings of fact unless they are clearly erroneous, Ind. Trial Rule 52(A), but does not defer to the trial court's conclusions of law. *Conner*, 711 N.E.2d at 1245. The reviewing court examines only the probative evidence and reasonable inferences that support the post-conviction court's determination and does not reweigh the evidence or judge the credibility of the witnesses.

1.     Effectiveness of Trial Counsel

The constitutional guarantee of counsel under the Sixth Amendment to the United States Constitution includes the right to effective assistance of counsel. *Sweeney v. State*, 704 N.E.2d 86, 106 (Ind. 1998), *cert denied* 527 U.S. 1035 (1999). Claims of ineffective assistance of trial counsel are generally reviewed under the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984), *reh'g denied*. *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006). A claimant must show counsel's performance fell below an

3

objective standard of reasonableness based on prevailing professional norms, and the deficient performance resulted in prejudice. *Id*. Prejudice occurs when the defendant demonstrates a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is one sufficient to undermine our confidence in the outcome. *Id.*

The two parts of the *Strickland* test are separate inquires, but a claim may be disposed of on either prong. *Id.* If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, we should do so. *Id*.

### A.    Jury Instructions

Wilson's counsel did not request lesser-included offense instructions and instead chose to pursue only self-defense. Wilson notes witness testimony was inconsistent as to who shot first and whether Wilson continued to shoot at the car as it drove away. This, Wilson says, would have entitled him to instructions on voluntary manslaughter, reckless homicide, and possibly other offenses "because the evidence that contradicted self defense supported sudden heat, battery, and recklessness." (Br. of Appellant at 15.)

As a general rule, a defendant in a criminal case is entitled to have the jury instructed on any defense theory that has some foundation in the evidence. *Springer v. State*, 779 N.E.2d 555, 558 (Ind. Ct. App. 2002), *aff'd in part, adopted in part*, 798 N.E.2d 431 (Ind. 2003). This is so even if the evidence supporting the defense is weak and inconsistent. *Id.* However, the evidence must have some probative value to support the defense. *Id.* As trial

4

counsel's decision not to request lesser-included offense instructions was a reasonable strategic decision, we may not find counsel ineffective.

In *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998), trial counsel decided not to tender instructions on lesser-included offenses as part of an "all or nothing" trial strategy. It is well-established that ineffective assistance of counsel claims cannot succeed based on counsel's strategic decisions, unless the strategy is so deficient or unreasonable as to fall outside of the objective standard of reasonableness. *Id*. This is so even when "such choices may be subject to criticism or the choice ultimately prove detrimental to the defendant." *Id.* Therefore, a tactical decision not to tender an instruction on a lesser-included offense does not amount to ineffective assistance, even where the lesser-included offense is inherently included in the greater offense. *Id.*

The victim in *Autrey* was killed in a brawl that involved a number of people. There was conflicting testimony about whether the victim was killed by a bottle, a cement block, or a bat, and about who threw the object or wielded the bat. Autrey's counsel decided to pursue an all-or-nothing strategy, and we determined that strategy was appropriate and reasonable when witnesses' testimony "was so discordant that by the end of this trial a reasonable juror could have concluded the victim was not struck by the bottle or the cement block, that the defendant never used the bat, and that the blood on defendant's clothes came from the bat alone." *Id*. at 1141-42. In closing argument, Autrey's trial counsel tried to convince the jury that someone else caused the victim's death. "[T]hat the jury found the defendant guilty does

not make this strategy deficient.  This was an instance where the guilt of defendant rested upon the credibility of the witnesses, which is the sole province of the jury." *Id.* at 1142.

Wilson's trial counsel testified he did not tender lesser-included offense instructions because those offenses "would have been contradictory to that [self-defense] defense and would have made it much less effective." (Tr. at 8-9.)  He also noted the facts of Wilson's case did not lend themselves to an argument Wilson acted in sudden heat so as to justify voluntary manslaughter.  Counsel's all-or-nothing decision to pursue only self-defense was a strategic decision like that in *Autrey* and we cannot find counsel ineffective on that ground.

### B.    Closing Argument

Wilson next argues trial counsel was ineffective because he did not object to prosecutorial misconduct during closing argument.  The procedure for deciding a claim of prosecutorial misconduct consists of two steps.  *Gasaway v. State*, 547 N.E.2d 898, 901 (Ind. Ct. App. 1989), *reh'g denied, trans. denied*.  First, the court must determine whether the prosecutor in fact engaged in misconduct.  *Id*.  Determination is made by reference to case law and the disciplinary rules of the Code of Professional Responsibility.  *Id*.  Then, we consider whether the misconduct, under all circumstances, placed the defendant in a position of grave peril to which he should not have been subjected.  *Id*.  Wilson has identified instances of misconduct, but we cannot say they subjected him to grave peril.

It is misconduct to phrase final argument in a manner calculated to inflame the passions or prejudices of the jury.  *Id*.  For example, we have found misconduct when the prosecutor stressed the jurors' right to be safe in their own homes and asked one juror if he

6

wanted his wife raped. In finding misconduct in that case, we held the prosecutor was appealing to the jurors' fears and was asking them to convict the defendant because he was dangerous, not because he was guilty. *Id*. (citing *Johnson v. State*, 453 N.E.2d 365, 369 (Ind. Ct. App. 1983)).

The danger inherent in inflammatory comments is that the jury, because it is fearful, angry, or controlled by other emotions, will find guilt no matter what the evidence indicates. *Id*. at 901-02. We therefore focus on the probable effect the prosecutor's actions would have on the jury's ability to judge the evidence fairly. This focus is necessarily fact sensitive and entails a consideration of grave peril. *Id*. at 902.

Our adversary system permits a prosecutor to prosecute with "earnestness and vigor." *Id*. at 902 (quoting *Berger v. United States*, 295 U.S. 78, 88, (1935)). The line between acceptable and improper advocacy is not always easily drawn; the question is whether the defendant was deprived of a fair trial. *Id*. In *Gasaway*, the prosecutor recited a poem during final argument:

> Christopher Gasaway has died;
> yes, little Chris is dead.
> Burned and beaten, literally,
> from the soles of his feet, to the top of his head.
> Pursuing one man while, yet married to another;
> Kathy, lying to everyone; her husband, her sisters, her brother.
> When faced with devastation, running from old and rejected by new.
> She struck out in rage;
> angry red turned to black and blue.
> Murdered by mommy, who was entrusted to care,
> but no one said his life would be long or his death would be fair.
> Christopher Gasaway has died;
> yes, little Chris is dead.
> But no matter, she can always have more.

7

*Id*. at 900. The poem was coordinated with the showing of autopsy slides. We found it "obvious" the presentation did not inflame the jury, as Gasaway was convicted of involuntary manslaughter, not murder. *Id*.

Wilson, by contrast, was convicted of murder. He alleges the prosecutor in his case committed misconduct by making two statements to which his trial counsel did not object.[3] The first statement was made after the prosecutor noted in closing argument that jurors always want more evidence. The prosecutor said "We feel we've presented everything we could" in the form of evidence and witnesses, and then said "[Defense counsel] has had access to those things, all the photographs, all the exhibits, anything that might have been exonerating to his client, he could have brought to you also." (Exhibit 3 at 3.) Wilson characterizes this statement as an improper comment on his decision not to testify and as indicating the prosecutor had personal knowledge that there was no exonerating evidence.

This statement was not a comment on Wilson's decision not to testify,[4] but it was improper because it indicated the prosecutor had personal knowledge that there was no exonerating evidence. *See Wells v. State,* 848 N.E.2d 1133, 1145 (Ind. Ct. App. 2006), *on reh'g granted* 853 N.E.2d 143 (Ind. Ct. App. 2006), *trans. denied* 860 N.E.2d 595 (Ind.

---

[3] Wilson also asserts the prosecutor asked the jurors to "do like me and stop these people." (Br. of Appellant at 20.) We cannot find that quoted language in the record. Wilson may have been referring to the prosecutor's statement he was trying to "enforce the laws," (Exhibit 3 at 3): "I suggest you follow what I've done. Don't be intimidated. Don't be afraid . . . have the courage to do the right thing. . . . To tell the community we're not gonna have these shootings. Find this man guilty." (*Id*. at 31-32.)

[4] It is apparent the statement was a general reference to evidence in the form of witness testimony, photographs, and exhibits, and not to Wilson's testimony.

2006), *cert. denied* 549 U.S. 1322 (2007) (finding improper a prosecutor's statement he would not have prosecuted the case if there had been any credible evidence of a conspiracy to arrest the defendant). *And see Lopez v. State*, 527 N.E.2d 1119, 1125-26 (Ind. 1988) (during argument, counsel must not imply a superior personal knowledge of either guilt or innocence that could induce the jury to decide the case on matters outside the evidence).

A second improper statement came when the prosecutor was addressing a photograph of Wilson with three other men. Three of the four men are holding guns. The prosecutor said "if we have combat, self-defense does not apply." (Exhibit 3 at 12.) He went on:

> Now with regard to combat, that's why I think this photograph is so important. This photograph is not your local rabbit hunting club or skeet shooting club. These men are armed for combat. It's – When I looked at this photograph the first time, my initial reaction was it scared me, it frightened me. I suggest to you, that's the purpose of this. That's what these men are doing. They're scaring the enemy. They're ready for combat. Mr. Wilson was ready for combat. . . . And when he left the house with the gun, he entered combat. Doesn't matter who shot first. He was ready. He was ready to kill, and shoot, and fight.

(*Id*. at 12-13.)

We agree with Wilson that this was an improper attempt to inflame the fears and prejudices of the jury. In Wilson's direct appeal, our Indiana Supreme Court said:

> we do not view the photograph as having any relevance whatsoever. First, because no weapon was introduced at trial, there was no comparison between the shell casings found at the scene and the weapon depicted in the photograph. Second, the record shows Wilson possessed the weapon in the photograph two months before Nesbitt was murdered. There is no link between the shell casings recovered at the crime scene and the photograph the State introduced at trial. In sum, the photograph did not make more or less probable any issue before the jury.

9

770 N.E.2d at 802.[5]

As there was evidence before the jury that would have permitted a finding he acted in self-defense, Wilson asserts, the prosecutor's comments "veered from permissible comments on the evidence to improper advocacy that the jury should convict Wilson because he was a danger to the community." (Br. of Appellant at 22.) According to Wilson, the argument was made "solely to scare the jury into overlooking self defense." (Reply Br. of Appellant at 2.)

The State asserts it correctly stated the law [that if a person engages in combat, self-defense is negated]." (Br. of Appellee at 12.) The State offers no citation to authority to support its premise that if a person engages in combat, all such defenses are necessarily negated, and we reject its assertion that was a correct statement of the law. There are situations where a "combatant" may claim self-defense:

> [A] mutual combatant, whether or not the initial aggressor, must declare an armistice before he or she may claim self-defense. *Wooley v. State,* 716 N.E.2d 919, 926 (Ind. 1999); *see* I.C. § 35-41-3-2(e)(3) (2002) ("[A] person is not justified in using force if: . . . the person has entered into combat with another person or is the initial aggressor, unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action.").

*Wilson v. State*, 770 N.E.2d 799, 801 (Ind. 2002). While we do not suggest there was evidence Wilson "withdrew" or "declared an armistice," the prosecutor's statement "if we have combat, self-defense does not apply" was too broad to be a correct statement of the law; it suggested to the jury that *all* of Wilson's self-defense arguments were unavailable to him.

---

[5] The *Wilson* Court found the trial court erred by admitting the photograph into evidence, but determined the error did not affect Wilson's substantial rights because the evidence that Wilson did not act in self-defense was overwhelming. 770 N.E.2d at 802.

10

The State does not directly address, or even acknowledge, Wilson's argument the prosecutor's statements suggested the jury should convict Wilson on some ground other than the evidence. The prosecutor's statements that it "[d]oesn't matter who shot first" because Wilson was "armed for combat," "scaring the enemy," was "ready for combat" and "was ready to kill, and shoot, and fight," (Tr. at 12-13), were transparent invitations to the jury to convict Wilson on some ground other than the evidence, and were misconduct.[6]

Having found misconduct, we must determine whether it deprived Wilson of a fair trial. In other words, we must determine whether the prosecutor's inflammatory comments, or his suggestion he knew there was no exonerating evidence, caused the jury to "find guilt no matter what the evidence indicates." *See Gasaway,* 547 N.E.2d at 902.

The usual rules for appellate relief in cases of prosecutorial misconduct apply, that is, we must determine whether the defendant was subjected to grave peril to which he should not have been subjected. *Bassett v. State*, 895 N.E.2d 1201, 1209 (Ind. 2008), *cert. denied __ U.S. __*, 129 S.Ct. 1920 (2009). Grave peril can be avoided if there is sufficient independent evidence of guilt or if there is appropriate trial court management of the misconduct. *Id.* Our Supreme Court noted "there was never any doubt that Wilson fatally wounded Nesbitt" and "evidence that Wilson did not act in self-defense was overwhelming." *Wilson*, 770 N.E.2d at

---

[6] The State also asserts, without explanation or citation to the record, that the "decision not to object was strategic." (Br. of Appellee at 12.) The record does not support that characterization. At the post-conviction hearing, counsel was asked about the photograph. He said he had objected during the trial to admission of the photograph and felt it was very prejudicial, but "[i]t was in and the prosecutor has every right in the world to comment on the evidence so no, I didn't consider objecting to it." (P-C Tr. at 11.) We decline the State's invitation to hold an objection counsel "didn't consider" represents a "strategic" decision. He also noted he "generally" does not like to object during opposing counsel's closing argument because it tends to alienate the jury. (*Id*. at 12.)

11

802.  We therefore cannot say the prosecutor's misconduct placed Wilson in grave peril.

### C.    Potential Witnesses

Wilson argues counsel was ineffective for failing to interview a number of witnesses who were available to testify at trial.  To demonstrate he was prejudiced, Wilson asserts the trial testimony was "inconclusive," (Br. of Appellant at 23), about who fired first, and he claims these witnesses could have testified the men in the car shot first or continued shooting as they drove toward Wilson.

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In an ineffectiveness case, a decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.  As counsel did not investigate and call all available witnesses, Wilson asserts, his ability to challenge the State's theory was prejudiced.

It was not, because it is unlikely the additional witnesses would have produced a different result.[7]  Fonda Warwick testified at the post-conviction hearing that the men in the car must have continued shooting as they drove toward Wilson, as she heard the gunshots getting louder as the car approached.  This testimony would not change the outcome of the trial because it was consistent with and cumulative of other evidence presented at trial.

---

[7]  In its brief, the State addresses a number of potential witnesses that Wilson never argues should have been called.  For example, it discusses Richard Listenbee, who did in fact testify at Wilson's trial.  It also addresses at some length Quentin Abbott and Jaumita Holland, but Wilson does not argue they should have been called.  As these witnesses have no apparent relevance to Wilson's allegation of error, they will not be addressed further.

Bruce McDonald testified at the post-conviction hearing that he heard[8] shots come from the alley first, and he heard shots continue to come from the car after it exited the alley. The State asserts Wilson was not prejudiced by counsel's failure to call McDonald, as McDonald testified the only person he *saw* shooting was Wilson.

Amanda White testified before the post-conviction court that she heard a sound like hammering. She looked out her window and saw a passenger in the car shooting from the car when it was in the alley, but she did not hear more gunshots after that.[9] As the "hammering" sound could have been shots fired by Wilson, an occupant of the car, or both, this evidence is also consistent with and cumulative of other evidence presented at trial.

Finally, Wilson's daughter S.T. testified at the post-conviction hearing that two men in a car asked her brother where Wilson was and that the men in the car started shooting when Wilson exited his house. The State notes S.T. was nine years old and asserts, without explanation or citation to authority, she had "obvious bias, based on her relation to Wilson." (*Id.* at 17.) This, the State says, gave counsel "sound strategic reasons," (*id.*), not to call her. The State directs us to nothing in the record that suggests counsel made a "strategic" decision not to call S.T., and we decline the State's apparent invitation to hold counsel can never be

---

[8] The State asserts Warwick "did not witness in detail the sequence of events during the shooting," (Br. of Appellee at 15), because she heard shots but did not see people shooting. It asserts McDonald saw only Wilson shooting, and heard shots from the car. The State offers no explanation or authority to support its apparent premise that testimony about what a witness heard carries less weight than testimony about what a witness saw, and we decline to so hold.

[9] The State notes Wilson alleged in his petition for post-conviction relief that White would testify she saw the entire incident, and that the people in the car fired first and continued to fire as they drove away. The State then asserts, without explanation, "[h]er testimony, if given, would have fit the State's evidence," so her omission did nothing to impact Wilson's trial. (Br. of Appellee at 16.)

13

ineffective for failing to call a witness just because the witness is related to the defendant. Nor will we hold a witness related to a defendant necessarily has "obvious bias."

Nevertheless, counsel was not ineffective for declining to call the additional witnesses. Most of the testimony they would offer was consistent with and cumulative of other evidence presented at Wilson's trial, and as our Supreme Court noted, the evidence Wilson did not act in self-defense was "overwhelming." *Wilson*, 770 N.E.2d at 802. As we cannot say the evidence offered by the additional witnesses probably would produce a different result, counsel's action did not prejudice Wilson.

### D. Cumulative Error

Errors by counsel that are not individually sufficient to prove ineffective representation may combine to constitute ineffective assistance when viewed cumulatively. *Benefield v. State*, 945 N.E.2d 791, 803 (Ind. Ct. App. 2011). Wilson asserts counsel did not present witnesses who could have supported the defense theory, did not ensure the jury "had options other than Murder to choose from," and did not object to the State's improper arguments. (Appellant's Br. at 25.) The cumulative effect of this, he argues, was to deny him a fair trial.

As explained above, "there was never any doubt that Wilson fatally wounded Nesbitt" and "evidence that Wilson did not act in self-defense was overwhelming." *Wilson*, 770 N.E.2d at 802. In light of the evidence underlying those holdings by our Supreme Court on Wilson's direct appeal, we cannot find any errors by counsel, even viewed cumulatively, denied Wilson a fair trial. *See French v. State*, 778 N.E.2d 816 (Ind. 2002) (noting a

14

conviction based on "an accumulation of defense attorney errors, when counsel's mistakes do substantial damage to the defense, must be reversed," *id*. at 826, but determining "[t]here is no reasonable probability that the alleged errors made a difference," *id*. at 827, when French admitted he answered the phone calls from an informant and agreed to sell her cocaine and when police officers testified they recognized French's voice on the body wire worn by the informant during the dealing).

2. <u>Effectiveness of Appellate Counsel</u>

The standard of review for a claim of ineffective assistance of appellate counsel is the same as for trial counsel in that the defendant must show appellate counsel was deficient in her performance and the deficiency resulted in prejudice. *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006). To satisfy the first prong, the petitioner must show counsel's representation fell below an objective standard of reasonableness and counsel committed errors so serious that petitioner did not have the "counsel" guaranteed by the Sixth Amendment. *Id*. To show prejudice, the petitioner must show a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *Id.*

Ineffective assistance of appellate counsel claims generally fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Id*. To show counsel was ineffective for failing to raise an issue on appeal, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. *Id*. To evaluate the performance prong when counsel waived issues on appeal, we consider: (1) whether the unraised issues are significant and obvious from the face

15

of the record, and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Id*. If that demonstrates deficient performance, then we examine whether the issues appellate counsel did not raise would have been clearly more likely to result in reversal or an order for a new trial. *Id*. We consider the totality of counsel's performance to determine whether the client received constitutionally adequate assistance. *Id*. at 1195-96. We do not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made. *Id*. at 1196. Ineffective assistance is rarely found where a defendant asserts appellate counsel should have raised an issue on direct appeal because deciding what issues to raise is one of the most important strategic decisions to be made by appellate counsel. *Id.*

Trial counsel objected to the admission of evidence regarding shell casings found several weeks after the shooting in a residence on a different street. Police found those shells while investigating a shooting that occurred when Wilson was in jail, and counsel argued the evidence was not relevant. The trial court overruled the objection, finding relevance because two of the eighteen shells police recovered matched those recovered on Taylor Street, where Wilson's offense took place.

Wilson argues appellate counsel should have challenged the admission of this evidence because Wilson never denied firing a gun on Taylor Street. Wilson cites *Thompson v. State*, 690 N.E.2d 224, 236 (Ind. 1997) (the State may not "flood the courtroom" with unnecessary and prejudicial details of prior criminal conduct merely because some of that evidence is relevant and admissible), and asserts the admission of the shells permitted the

16

jury to make the "forbidden inference" that prior wrongful conduct suggests present guilt. *Udarbe v. State*, 749 N.E.2d 562, 564 (Ind. Ct. App. 2001). In this case, the evidence also bolstered the State's improper closing argument that painted Wilson as "a gun carrying and shooting danger to the community that the jury should protect themselves [sic] from by convicting him of murder." (Br. of Appellant at 27.)

The State argues evidence multiple shell casings were found was relevant to rebut Wilson's self-defense claim, apparently because it indicates Wilson fired multiple times. Therefore, it asserts, an appellate challenge to the admission of the shells would not have prevailed. But the State does not explain how casings found at a different location weeks afterward proves anything about Wilson's behavior at the time and place where the charged crime unquestionably occurred. In the alternative, the State argues admission of the evidence was harmless as cumulative of the testimony that multiple shots were fired. *See McCovens v. State,* 539 N.E.2d 26, 30 (Ind. 1989) (error in the admission of evidence is not prejudicial if the evidence is merely cumulative of other evidence in the record).

We believe an appellate challenge to the admission of the shells found elsewhere might have been successful, as the relevance of those shells was minimal at best, and their admission clearly permitted the jury to draw a forbidden inference about Wilson's guilt. But while we cannot condone the State's transparent attempt to "flood the courtroom" with unnecessary and prejudicial details of prior criminal conduct, *Thompson*, 690 N.E.2d at 236, we must agree any ineffectiveness by appellate counsel in that regard was harmless; the

17

evidence was cumulative of testimony by numerous witnesses that Wilson had fired multiple times.

### 3. Newly-Discovered Evidence

Finally, Wilson argues new evidence entitles him to a new trial. Our Supreme Court has provided nine criteria for determining acceptance of newly-discovered evidence brought under Post–Conviction Rule 1(1)(a)(4):

> the petitioner must establish (1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result.

*State v. Brunner*, 947 N.E.2d 411, 414 (Ind. 2011*), reh'g denied*. The burden of showing all nine requirements are met rests with the petitioner for post-conviction relief. *Taylor v. State*, 840 N.E.2d 324, 330 (Ind. 2006).

In ruling whether a piece of evidence would produce a different result, a trial judge may properly consider the weight that a reasonable trier of fact would give it and, while so doing, may also evaluate its probable impact on a new trial in light of all the facts and circumstances shown at the original trial of the case. *Fox v. State*, 568 N.E.2d 1006, 1007 (Ind. 1991). On appeal, the denial of a motion predicated on newly discovered evidence is considered a discretionary ruling and is reviewed deferentially. *Id.*

Wilson alleges four[10] new pieces of evidence justify a new trial. We explained above that testimony that might have been presented by Fonda Warwick, Bruce McDonald, and Amanda White was cumulative of other evidence already presented at trial. It therefore would not qualify for admission under Post–Conviction Rule 1(1)(a)(4). We accordingly address only whether subsequently-discovered testimony by Quentin Abbott permits a new trial.

Abbott testified in the post-conviction proceedings he found shell casings on Wilson's porch and in the yard and put them in his pocket. He did not mention them to the police who came to the scene, but years later, when Abbott encountered Wilson in prison, he told Wilson he had collected the shells. As this is consistent with the State's evidence that Wilson shot at the men in the car multiple times from the porch and the street, Wilson has not demonstrated it would lead to a different result.

As Wilson has not established he was prejudiced by the actions of his trial and appellate counsel or by the State's misconduct, we must affirm the post-conviction court.

Affirmed.

CRONE, J., concurs.

BARNES, J., concurs in result.

---

[10] The State addresses seven alleged new pieces of evidence, noting Wilson raised seven in his petition for post-conviction relief. As Wilson argues only four on appeal, we decline to address the additional three pieces of evidence discussed by the State.

19