**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

FILED
Mar 12 2013, 9:10 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN IVY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A02-1205-PC-378 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Thomas G. Wright. Special Judge
Cause No. 18D02-9612-CF-82

**March 12, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

John Ivy was convicted of murder, a felony. After our supreme court affirmed his conviction on direct appeal, Ivy petitioned for post-conviction relief. The post-conviction court denied his petition. He raises the following restated issues for our review: 1) whether the post-conviction court erred in concluding Ivy waived two of his post-conviction claims; and 2) whether the post-conviction court erred in concluding Ivy did not receive ineffective assistance of trial counsel.[1] Concluding the post-conviction court erred in finding Ivy had waived two issues, but notwithstanding that error, Ivy failed to demonstrate he was entitled to post-conviction relief on any of his claims, we affirm.

## Facts and Procedural History

On November 20, 1996, Ivy, Antione Barber, and a third man were robbed at gunpoint in Tanisha Love's apartment in Muncie by King David Preston and three other men. On November 21, 1996, Preston died of multiple gunshot wounds in Michael Horton's apartment, also in Muncie. Ivy and Barber were charged and tried separately for Preston's murder.

Love testified at Ivy's trial that she arrived at her apartment on November 20 in the midst of the robbery. Donnica Hall arrived separately at Love's apartment as several men ran out of the apartment, one of whom stopped to cut the tires on Ivy's car parked outside, the keys to which had been taken during the robbery. Hall and the three men who had been robbed filed a police report and then Hall drove the men back to their hometown of Dayton, Ohio, to retrieve Ivy's spare car keys. She then drove Ivy and

---

[1] Ivy also claims the post-conviction court erred in finding that his petition was barred by laches. Given that both the post-conviction court and this court discuss the merits of his claims, we need not decide this issue.

Barber back to Muncie, returning to Love's apartment at approximately 4 a.m. on November 21.

Samuel Powell testified that at approximately 8 p.m. on November 21, he encountered Ivy and Barber entering Horton's apartment building as he exited. Preston was at Horton's apartment at that time, getting ready to go out for the evening. Around 8 p.m., Horton answered a knock on his door to find Ivy and Barber in the hallway. Horton saw Ivy had a gun and fled to the apartment across the hall to call 911. He heard four or five gunshots, then steps retreating down the stairs, and returned to his apartment to find Preston bleeding on the floor. On cross-examination, Horton testified that he was currently in jail in Ohio for felony drug charges for which he faced a sentence of five to fifteen years:

> Q [by defense counsel]: Mr. Horton have you been offered anything by the State uh, regarding that pending case you have for your testimony in Court today?
> A: No.
> Q: You expect that your testimony today is going to be taken into account in regards to his pending case that you have?
> A: No.

Trial Transcript at 564-65.

Jimmy Powell testified that he saw Ivy a couple of days after Preston was killed, and in response to Jimmy's question about who would do that, Ivy said:

> A: He (inaudible) if he'd robbed you of two thousand.
> Q [by State]: Say anything else?
> A: Said how could you, you know embarrass you in front of, in front of (inaudible).

Id. at 593-94. Ivy also told Powell that he got a gun from his cousin. On cross-examination, Powell indicated he, too, was currently in jail in Muncie awaiting trial:

3

> Q [by defense counsel]: You been offered anything?
> A: No.
> Q: Do you expect leniency in return for your testimony for the State?
> A: (Inaudible).
> Q: Just here because you're a good citizen?
> A: I did cause my friends did that's why I did it.

Id. at 598.

In his own defense, Ivy testified that after Hall drove him back to Muncie on November 21, he retrieved his car and he and Barber returned to Dayton in the early evening. Ivy dropped Barber off and went to Dale Reeder's house, from where he called his mother. His mother told him his great-grandfather had passed away. Ivy then picked up his girlfriend LaDonna Simon and the two went to Ivy's mother's house, arriving around 5:30 p.m. and staying with her the rest of the night. Simon also testified that Ivy picked her up at home in Dayton approximately 5:30 p.m. on November 21 and they went to his mother's house, where they watched movies with her and stayed the night. At no time that evening was Ivy gone long enough to have driven to Muncie and returned.

Ivy, represented by a public defender, was found guilty of murder, a felony, following a jury trial in 1998, and sentenced to sixty-five years in prison. On appeal, our supreme court affirmed his conviction. Ivy v. State, 715 N.E.2d 408, 410 (Ind. 1999). In 2000, Ivy filed a pro se petition for post-conviction relief and was subsequently appointed counsel. In 2005, however, Ivy's public defender withdrew without the petition ever having been acted upon. In 2010, this time with Ivy's present counsel, Ivy again moved for post-conviction relief. The post-conviction court held an evidentiary hearing and issued findings of fact and conclusions of law denying Ivy's requested relief. Ivy now appeals. Additional facts will be provided as necessary.

4

## Discussion and Decision

### I. Standard of Review

"Post-conviction relief is not a substitute for a direct appeal. Post-conviction procedures create a narrow remedy for subsequent collateral challenges to convictions." Martin v. State, 760 N.E.2d 597, 599 (Ind. 2002) (citations omitted). To succeed on appeal from the denial of post-conviction relief, the petitioner must demonstrate that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Johnson v. State, 832 N.E.2d 985, 991 (Ind. Ct. App. 2005), trans. denied. A post-conviction court must make findings of fact and conclusions of law, and the findings must be supported by the facts and the conclusions must be supported by the law. Allen v. State, 749 N.E.2d 1158, 1164 (Ind. 2001), cert. denied, 535 U.S. 1061 (2002). The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. Johnson, 832 N.E.2d at 991.

### II. Waiver of Issues

In his 2010 petition for post-conviction relief, Ivy raised the following grounds for relief: 1) ineffective assistance of trial counsel; 2) newly-discovered evidence; and 3) prosecutorial misconduct at trial. The post-conviction court found Ivy had waived the newly-discovered evidence and prosecutorial misconduct claims by failing to present evidence with respect to these claims and by failing to raise them in his direct appeal. Ivy contends the post-conviction court erred in finding waiver.

If an issue is known and available on direct appeal but not raised, it is waived. White v. State, 971 N.E.2d 203, 206 (Ind. Ct. App. 1012), trans. denied. Ivy contends the State committed misconduct at his trial in statements it made during voir dire and closing

5

argument. This alleged error was known and available at the time of Ivy's direct appeal, and the post-conviction court is correct that even Ivy's "fundamental error" argument about these statements is waived on post-conviction. See Lindsey v. State, 888 N.E.2d 319, 325 (Ind. Ct. App. 2008) (noting a claim of fundamental error on post-conviction can only be made in the context of an ineffective assistance claim or if the issue was demonstrably unavailable at the time of trial and direct appeal), trans. denied. To the extent Ivy argues ineffective assistance of his trial counsel in failing to object to this alleged misconduct, that claim is allowed on post-conviction and Ivy did provide the transcript of the trial and question his trial counsel about that issue at the post-conviction hearing, however briefly. We will therefore address Ivy's prosecutorial misconduct claim within the context of our ineffective assistance of counsel discussion below.

With respect to Ivy's newly discovered evidence claim, he did present both the trial testimony and current deposition testimony of certain witnesses to support his claim, and part of his claim is that it was evidence unknown to him at the time of trial. The post-conviction court erroneously found this claim was waived, and we will address its merits below.

### III. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are governed by the two-part test announced in Strickland v. Washington . . . . First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

6

different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Smith v. State, 765 N.E.2d 578, 585 (Ind. 2002) (internal citations omitted).  There is a strong presumption that counsel's representation was adequate, and counsel is afforded considerable discretion in choosing strategy and tactics.  Stevens v. State, 770 N.E.2d 739, 746-47 (Ind. 2002), cert. denied, 540 U.S. 830 (2003).  "Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective."  Id. at 747.

### A. Alibi Witnesses

Ivy first argues his counsel's performance was deficient because counsel "called only Ivy and Ivy's girlfriend at trial to establish Ivy's alibi," and "[a]t least four (4) other witnesses were available to testify" as to Ivy's alibi that he was in Dayton during the shooting.  Appellant's Brief at 14.  We disagree.  Ivy's counsel filed a notice of alibi, and at trial called Ivy and his girlfriend to testify as to his alibi that he was in Dayton during the time of the shooting.  The testimony of additional witnesses to the same effect would merely have been cumulative of the evidence already presented, especially in light of contradictory testimony by State witnesses that Ivy was in Horton's apartment when Preston was shot.  This is unlike Williams v. State, 508 N.E.2d 1264 (Ind. 1987), which Ivy cites to support his argument, where a defendant's attorney filed a notice of alibi but then made no effort to depose the alibi witnesses, obtain affidavits from them, subpoena them, or otherwise ensure their attendance at trial, blaming the defendant's lack of funds to pursue those witnesses for his failure.  Id. at 1267.  In those circumstances, our supreme court concluded the defendant's counsel's performance was deficient because he

failed to produce any evidence at all from available sources in support of an alibi defense and that without such deficient performance there was a reasonable likelihood that the outcome of his trial would have been different. Id. at 1267-68. Here, Ivy's counsel did present evidence supporting his alibi defense, including the testimony of Ivy and another witness. That he did not present every alibi witness identified by Ivy is a strategic decision, especially when the testimony adduced at the post-conviction hearing indicated inconsistencies across all alibi witnesses' stories and other potentially problematic issues with the witnesses. See McCullough v. State, 973 N.E.2d 62, 83 (Ind. Ct. App. 2012) ("[I]n the context of an ineffective assistance claim, a decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess.") (quotations omitted).

## B. Rule 404(b) Evidence

Ivy next argues his counsel's performance was deficient because he failed "to object to testimony as to Ivy's prior acts after counsel's Motion in Limine as to those same matters had been granted by the trial court prior to trial." Appellant's Br. at 15. However, a motion in limine "is not a final ruling on the admissibility of evidence." Watson v. State, 972 N.E.2d 378, 386 (Ind. Ct. App. 2012) (quoting Simmons v. State, 760 N.E.2d 1154, 1158 (Ind. Ct. App. 2002)). Thus, a defendant must reassert his objection contemporaneously with the introduction of the evidence to allow the trial court an opportunity to make a final ruling in the context in which the evidence is introduced. White v. State, 687 N.E.2d 178, 179 (Ind. 1997). When an appellant brings an ineffective assistance claim based upon trial counsel's failure to make an objection, the appellant must demonstrate that the trial court would have sustained a proper objection, and that

failure to object resulted in prejudice. Glotzbach v. State, 783 N.E.2d 1221, 1224 (Ind. Ct. App. 2003).

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ind. Evidence Rule 404(b). Ivy argues his counsel should have objected to Love's testimony that when Ivy and Barber returned to her apartment in the early morning hours of November 21, Ivy struck her with a handgun and stated they had been robbed of cocaine. Ivy contends this evidence could be construed as evidence of battery and possession of cocaine. The State argues Love's testimony was evidence "inextricably bound with or intrinsic to the charged offense" in that they were a series of connect events. Brief of Appellee at 19. Even if Ivy's counsel should have objected because the testimony was evidence of another crime, Ivy has not shown that he was prejudiced by such failure to object. There was ample evidence to support his conviction for murder, including the testimony of two witnesses who stated they saw Ivy at the scene of the murder holding a handgun.

### C. Prosecutorial Misconduct

To prevail on a claim of ineffective assistance due to prosecutorial misconduct, a post-conviction petitioner must show that prosecutorial misconduct in fact occurred. Pruitt v. State, 903 N.E.2d 899, 928 (Ind. 2009). A court applies a two-step test in deciding claims of prosecutorial misconduct. Gasaway v. State, 547 N.E.2d 898, 901 (Ind. Ct. App. 1989), trans. denied. First, the court must determine whether the prosecutor in fact engaged in misconduct. Id. This determination is made by referencing

9

case law and the Rules of Professional Conduct. Second, the court must consider whether the misconduct, under the totality of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. Id. The prosecutorial conduct at issue consists of two portions of the State's closing argument. First, the State made comments leveraging its own personal integrity and character in support of its case. Second, the State referenced the fact that Ivy's mother was not in the courtroom and did not testify in his defense.

We conclude that even if the State's comments constituted misconduct, Ivy was not placed in a position of grave peril. As we have reiterated, among other incriminating evidence, two witnesses placed Ivy at the scene of the murder in possession of a handgun. It is unlikely the State's statements impacted the jury's decision-making process in light of the large body of evidence supporting Ivy's guilt. Ivy has failed to meet his burden of proving he was denied the effective assistance of trial counsel in any respect.

## IV. Newly Discovered Evidence

Ivy argues the post-conviction court erred in concluding there was no new evidence that arose after Ivy's trial. Ivy notes that at trial Horton and Jimmy Powell testified for the State and stated they were incarcerated on pending charges but did not expect leniency in return for their testimony; however, after Ivy's trial evidence arose suggesting they did expect leniency. Specifically, Ivy points out that Horton was only sentenced to one year in prison despite facing a potential sentence of five to fifteen years, and Powell subsequently stated in a deposition that he lied at trial about not expecting leniency in exchange for his testimony:

Q [Ivy's post-conviction counsel]: Was there any reason that you're aware of that they dropped it from an A to a C?

A: I'm almost for sure they did it for me testifying.

* * *

Q. So, at trial it's in – he asks you, do you expect leniency and have you been offered any, and you said, no. And he asks, do you expect leniency, and it's inaudible, your answer is. But then he says, just here because you're a good citizen. And then, you see, I did, cause [sic] my friends did it.

So, you never testified at trial that there was any kind of consideration you were being given for your testimony, is that correct?

A. Yep.

Q. So, when you make that statement at trial that wasn't true, is that correct?

A. No, I knew that was going to give me some leniency.

Q. So, you didn't tell the truth in your testimony there, did you?

A. No, sir.

* * *

Q [State]: Mr. Powell, at first you said that there was no agreement with the State before you were sentenced and that you had no understanding what the prosecutor in your case as regarding a sentence for you [sic], is that correct?

A: Yeah, but I knew they was [sic] going to give me some leniency.

Q: How is it that you knew that they were going to give you something?

A: It was unwritten rule. I knew with my testimony they would give me a break.

Q: Oh, was it just your belief that if you testified that they would give you something?

A: They – I knew they would.

Q: Were you contacted by anyone from the prosecutor's office stating that if you provided testimony in the Ivy case . . . being given some sort of consideration in your pending criminal matter?

A: No, but the detectives did.

Powell Deposition Transcript at 12-13, 15, 19.

As our supreme court has stated:

[N]ew evidence will mandate a new trial only when the defendant demonstrates that : (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial.

Taylor v. State, 840 N.E.2d 324, 329-30 (Ind. 2006) (quoting Carter v. State, 738 N.E.2d 665, 671 (Ind. 2000)). The burden of demonstrating all nine requirements rests with the petitioner. Id. at 330.

We conclude Ivy has failed to demonstrate all nine requirements. First, the evidence is merely impeaching. If the evidence demonstrated that an express agreement was formed between the State and Powell or Horton, such evidence would be more than merely impeaching, but preliminary discussions of such an agreement or a witness's hope of leniency are not required to be disclosed by the State, Tolliver v. State, 922 N.E.2d 1272, 1285 (Ind. Ct. App. 2010), trans. denied, and such evidence is therefore only valuable so as to impeach the testimony of the witness.

Second, because the evidence is merely impeaching, and because a witness other than Powell and Horton placed Ivy at the scene of the murder in possession of a handgun, we cannot conclude Ivy has demonstrated that the newly found evidence would probably produce a different result at retrial. Thus, the post-conviction court did not err in denying Ivy relief based on a claim of newly discovered evidence.

## Conclusion

Ivy has failed to demonstrate that the evidence leads unmistakably to a conclusion opposite that reached by the post-conviction court on any of his claims for relief, and we therefore affirm the judgment of the post-conviction court denying him relief.

Affirmed.

MAY, J., and PYLE, J., concur.