**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 17 2014, 7:07 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**MICHAEL R. JENT**
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL R. JENT, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 02A05-1304-PC-217 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Jr., Judge
Cause No. 02D04-0807-PC-72

**February 17, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Michael R. Jent ("Jent") appeals from the denial of his petition for post-conviction relief from his convictions of six counts of child molesting, each as a Class A felony, one count of child molesting as a Class C felony, and one count of criminal confinement as a Class C felony, contending that his trial and appellate counsel were ineffective and that the post-conviction court erred by not granting him a new trial on the basis of alleged newly discovered evidence.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts supporting Jent's convictions were set forth in our memorandum opinion affirming his convictions in his direct appeal as follows:

> On August 29, 2004, eight-year-old S.H. and her younger brother were walking home from a friend's house. As they walked, Jent drove up and asked S.H. if she wanted to see a picture of Jent's lost dog. When S.H. approached the car, Jent pulled her in and drove away. Jent drove S.H. to a house and once inside, Jent took her to a bedroom and undressed her.
>
> Jent then performed cunnilingus on S.H. After putting lotion on his penis, Jent put his penis into S.H.'s anus, and then had sexual intercourse with S.H. Jent also placed his fingers in S.H.'s anus and vagina. Finally, Jent had S.H. fellate him and when she began crying, Jent threatened to kill her if she did not remain quiet. Eventually, Jent "squirted [a clear liquid] onto [S.H.'s] butt and . . . vagina," *tr.* at 132, dressed her, and dropped her off near her home.
>
> A neck swab taken that night from S.H. was determined to contain DNA that matched Jent's. S.H. also subsequently identified a house owned by Jent as the place she was taken. A search of the house yielded further evidence, including a lotion bottle with Jent's fingerprint on it, and an enema bottle exhibiting a mixture of DNA from which Jent and S.H. could not be excluded as possible donors. In addition, serological testing of a shirt recovered from the house yielded a presumptive positive test for blood and a confirmatory test for seminal fluid. Two samples from the shirt underwent DNA testing. "Sample 8A2" demonstrated the presence of a mixture with a major and a minor profile. Jent was confirmed to be the source of the major

profile and S.H. could not be excluded as a contributor to the minor profile. "Sample 8A1" demonstrated the presence of a mixture from which Jent and an unknown individual could not be excluded as possible contributors. S.H., however, was excluded as a possible contributor.

The State charged Jent with six counts of Class A felony child molesting, Class C [felony] child molesting, Class C felony criminal confinement, and alleged that he was an habitual offender. The jury found Jent guilty on all six counts of Class A felony child molesting, Class C felony child molesting, Class C felony criminal confinement and determined he was an habitual offender. The trial court sentenced him to an aggregate sentence of 238 years of incarceration.

*Jent v. State*, No. 02A03-0510-CR-512, slip op. at 2-3 (Ind. Ct. App. July 24, 2006), *trans. denied*.

On July 10, 2008, Jent filed his petition for post-conviction relief, which he later amended on November 10, 2008, and again later on February 25, 2009. On April 4, 2012, the State filed a motion to require Jent to submit his case by affidavit. On August 8, 2012, Jent filed his affidavit in support of his petition and moved to file an amended petition for post-conviction relief. Jent's grounds for post-conviction relief were alleged newly discovered evidence and ineffectiveness of trial and appellate counsel. The post-conviction court denied Jent's petition for post-conviction relief on April 19, 2013.[1] Jent now appeals.

## DISCUSSION AND DECISION

Because Jent appeals from the trial court's denial of his petition for post-conviction relief, he appeals from a negative judgment. *See Fisher v. State*, 878 N.E.2d 457, 463 (Ind. Ct. App. 2007), *trans. denied* (appeal from denial of post-conviction relief is appeal from a negative judgment). A petition must establish that the evidence as a whole unmistakably

---

[1] We commend the trial court for the thoroughness and clarity of the findings of fact and conclusions of law in this matter which greatly facilitated our appellate review.

3

and unerringly leads to a conclusion contrary to that of the post-conviction court. *Id.* Upon review, we will disturb a post-conviction court's decision as being contrary to law only where we find that the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *trans. denied.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied.* On review, we accept the post-conviction court's findings of fact unless they are clearly erroneous, and no deference is given to its conclusions of law. *Fisher*, 878 N.E.2d at 463.

Post-conviction proceedings do not afford a petitioner for post-conviction relief the opportunity for a super appeal, but instead, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied*, 534 U.S. 1164 (2002); *Wieland v. State*, 848 N.E.2d 679, 681 (Ind. Ct. App. 2007), *trans. denied, cert. denied*, 549 U.S. 1038 (2006). Post-conviction proceedings do not substitute for a direct appeal and provide only a narrow remedy for subsequent collateral challenges to convictions. *Ben-Yisrayl*, 738 N.E.2d at 258. The petitioner for post-conviction relief bears the burden of proving the grounds raised by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5).

Jent argues that the post-conviction court erred by denying his request for a new trial on the basis of alleged newly discovered evidence. Jent contends that he discovered after trial that he had genital herpes at the time that he molested S.H. He asserts that if he was the perpetrator, S.H. would have contracted genital herpes from him. In support of his

argument Jent designated a report from the Indiana Department of Child Services, which

he claims shows that S.H. had not contracted any sexually transmitted disease.

> The Indiana Supreme Court has enunciated nine criteria for admission of
> newly discovered evidence.

>> [N]ew evidence will mandate a new trial only when the
>> defendant demonstrates that: (1) the evidence has been
>> discovered since the trial; (2) it is material and relevant; (3) it
>> is not cumulative; (4) it is not merely impeaching; (5) it is not
>> privileged or incompetent; (6) due diligence was used to
>> discover it in time for trial; (7) the evidence is worthy of credit;
>> (8) it can be produced upon a retrial of the case; and (9) it will
>> probably produce a different result at retrial.

> *Taylor v. State*, 840 N.E.2d 324, 329-30 (Ind. 2006) (citing *Carter v. State*,
> 738 N.E.2d 665, 671 (Ind. 2000)) (brackets in original). On appeal, the
> denial of a petition predicated on newly discovered evidence is considered a
> discretionary ruling and is reviewed deferentially. *Fox v. State*, 568 N.E.2d
> 1006, 1007 (Ind. 1991) (citing *Hammers v. State*, 502 N.E.2d 1339 (Ind.
> 1987)). Accordingly, we analyze the nine factors "'with care, as the basis
> for newly discovered evidence should be received with great caution and the
> alleged new evidence carefully scrutinized.'" *Taylor*, 840 N.E.2d at 330
> (quoting *Carter*, 738 N.E.2d at 671). "The burden of showing that all nine
> requirements are met rests with the petitioner for post-conviction relief." *Id.*
> (citing *Webster v. State*, 699 N.E.2d 266, 269 (Ind. 1998)).

*Dickens v. State*, 997 N.E.2d 56, 60-61 (Ind. Ct. App. 2013).

The post-conviction court found that Jent had submitted no conclusive medical

evidence to show that S.H. had not contracted a sexually transmitted disease. We agree.

The evidence submitted does not establish that Jent had tested positive for genital herpes

at the time of the molestation, but shows a positive test result on August 8, 2005, almost a

year after the molestation. Jent has no supporting evidence that a doctor told him that the

levels reflected on that test indicated that he had contracted genital herpes for a period

extending prior to the molestation. Jent's Exhibit C to his amended petition provides

5

inconclusive evidence of whether he tested positive for genital herpes from 2000 to 2010.

"[T]he newly discovered evidence must be material and decisive in character and be such as to raise a strong presumption that it will, in all probability, result in an opposite conclusion on another trial." *Augustine v. State*, 461 N.E.2d 101, 105 (Ind. 1984) (quoting *Marshall v. State*, 254 Ind. 156, 162, 258 N.E.2d 628, 631 (1970)). Additionally, a post-conviction court considers "the weight which a reasonable trier of fact would give the proffered evidence and the probable impact of it in light of all the facts and circumstances shown at the original trial of the case." *Adams v. State*, 430 N.E.2d 771, 774 (Ind. 1982). Jent has failed to meet his burden of raising this presumption. Further, a case Jent cites in support of his contention, *Shaffer v. State*, 453 N.E.2d 1182 (Ind. Ct. App. 1983), which is stronger than Jent's case, affirmed that post-conviction court's denial of a new trial based on newly discovered evidence.

In *Shaffer*, the petitioner argued that because it was discovered after trial that the victim of the sexual assault had gonorrhea, that the petitioner did not contract gonorrhea, and that the petitioner's wife, who had sexual relations with the petitioner after the sexual assault, did not contract gonorrhea, it followed that the petitioner could not have been the perpetrator. The petitioner, when asked by a medical officer if he had any symptoms of venereal disease, replied that he did not. Here, Jent has likewise failed to submit evidence of the supposed certainty that the victim would have contracted genital herpes from sexual contact with him. Given the strength of the evidence adduced at trial, including fingerprints, DNA, and the victim's testimony, we cannot conclude that in all probability an opposite conclusion would result at a new trial. The post-conviction court did not err

6

by finding and concluding that Jent had failed to meet his burden.

The remainder of Jent's claims involve allegations of ineffective assistance of trial and appellate counsel. There is a strong presumption that counsel rendered effective assistance and made all significant decisions in the exercise of reasonable professional judgment. *Walker v. State*, 779 N.E.2d 1158, 1161 (Ind. Ct. App. 2002). As for counsel's performance, we give considerable deference to counsel's discretion in choosing strategy and tactics. *Id.* Accordingly, a defendant must show more than isolated poor strategy, bad tactics, a mistake, carelessness, or inexperience; the defense as a whole must be inadequate. *Law v. State*, 797 N.E.2d 1157, 1162 (Ind. Ct. App. 2003).

To prevail on a claim of ineffective assistance of counsel, Jent must show (1) that counsel's performance fell below an objective standard of reasonableness as determined by prevailing professional norms, and (2) that the lack of reasonable representation prejudiced him. *See Shane v. State*, 769 N.E.2d 1195, 1200 (Ind. Ct. App. 2000). Essentially, Jent must show that but for counsel's deficient performance, the result of the proceedings would have been different. *See Law*, 797 N.E.2d at 1161. We will find prejudice when the conviction or sentence has resulted from a breakdown of the adversarial process that rendered the result unjust or unreliable. *Id.* at 1161-62. If we can easily dismiss an ineffectiveness claim based upon the prejudice analysis, we may do so without addressing whether counsel's performance was deficient. *Id.* at 1162. We apply the same standard of review to claims of ineffective assistance of appellate counsel as we apply to claims of ineffective assistance of trial counsel. *Williams v. State*, 724 N.E.2d 1070, 1078 (Ind. 2000), *cert. denied*, 531 U.S. 1128 (2001).

7

At trial during re-direct examination of Detective Kenneth Clement, there was no objection made to Detective Clement's response to a question about whether he had reached a determination if Jent was living at the address he had supplied to police. Jent claims that the failure to object to Detective Clement's response constitutes ineffective assistance of trial counsel. Detective Clement testified that Jent "had been evicted or been put out of that trailer, was my understanding." *Appellant's Br.* at 16 (citing *Trial Tr.* at 464).

To prove ineffective assistance of counsel due to failure to object, a defendant must prove that the objection would have been sustained if made and that he was prejudiced by the failure to object. *Kubsch v. State*, 934 N.E.2d 1138, 1150 (Ind. 2010). Jent contends that his trial counsel should have objected citing Indiana Evidence Rules 403 (evidence excluded where probative value outweighed by prejudice) and 404 (exclusion of evidence of other crimes or wrongs to prove character or trait of defendant).

Our Supreme Court has set forth the following analysis:

> This Court will not speculate about what may have been the most advantageous strategy in particular cases. A deliberate choice made by counsel for some tactical or strategic reason does not establish ineffective assistance of counsel. Moreover, the decision to forego perfunctory objections having little chance of success or no direct or substantial relationship to the main thrust of the defense is within the realm of reasonable trial strategy. The appellant must show that counsel's alleged failure to act or his choice of strategy harmed the cause. When an ineffective assistance claim is predicated on counsel's failure to interpose an objection, appellant has the burden to show that a proper objection would have been sustained by the trial court.

*Pennycuff v. State*, 745 N.E.2d 804, 812 (Ind. 2001) (quoting *Hudson v. State*, 496 N.E.2d 1286, 812 (Ind. 2001) (internal citations omitted).

8

On re-direct examination, the State asked Detective Clement about the address provided by Jent to law enforcement. Detective Clement responded as follows:

> No. He had moved out of that trailer prior to us going there on the 14th. He had been evicted or been put out of that trailer, was my understanding. Or moved out somewhere.

*Appellee's Br.* at 13 (citing *Trial Tr.* at 464).

The post-conviction court correctly concluded that this evidence was not prejudicial to Jent. Detective Clement's testimony provided three possible reasons why Jent no longer lived at the address provided; namely, that he had been evicted, put out, or moved. The use of the word evicted, and trial counsel's failure to object to that testimony, did not harm Jent's cause. Jent's DNA and fingerprints were found at the scene of the molestation on objects used by the perpetrator of the crimes. The use of the word evicted was minimal and isolated in light of the totality of the circumstances, and would not have had much impact on the jury's evaluation of Jent's defense. "We look to the totality of the evidence in reviewing the prejudicial impact of counsel's errors; in reviewing the performance, we assess each allegation of substandard assistance independently." *Kutscheid v. State*, 592 N.E.2d 1235, 1238 (Ind. 1992). Furthermore, even if the failure to object was not a strategic decision, isolated mistakes, poor strategy, and instances of bad judgment do not necessarily render representation ineffective. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002).

Jent also asserts that his trial counsel was ineffective for failing to object to testimony from the treating nurse, claiming that the testimony about what the victim said during treatment after the sexual assault was inadmissible hearsay, as it was not made for

9

the purpose of medical diagnosis or treatment. Treating nurse Stephanie Short testified that S.H. told her, during treatment after the assault, that Jent said he "wanted to make babies with me." *Appellee's Br*. at 15 (citing *Trial Tr*. at 211). Our evidence rules provide in pertinent part as follows:

> Rule 803. Exceptions to the Rule Against Hearsay—Regardless of Whether the Declarant is Available as a Witness
>
> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> . . . .
>
> (4) Statement Made for Medical Diagnosis or Treatment. A statement that:
>
> (A) is made by a person seeking medical diagnosis or treatment;
>
> (B) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and
>
> (C) describes medical history; past or present symptoms, pain or sensations; their inception; or their general cause.

Ind. Evidence Rule 803(4).

Had trial counsel objected to the statement, it is unlikely that it would have been sustained. S.H.'s statement to the treating nurse was relevant to the victim's medical diagnosis and indicated the type of sexual attack she had endured. The content of the statement also alerted the nurse to examine the victim for sexually transmitted diseases.

Assuming, *arguendo*, that a properly made objection would have been sustained, Jent has failed to establish how the failure to object to this statement prejudiced his defense. The nurse testified about the amount and degree of injuries she observed on the victim. In light of the testimony about the trauma S.H. suffered during the sexual attack, evidence of this statement Jent made during the attack would not have affected the jury's decision. Jent

10

has failed to show that his cause was prejudiced by trial counsel's failure to object to this statement.

Jent alleges next that his trial counsel was ineffective by failing to object to what Jent claims were instances of prosecutorial misconduct. It is well established that in order to prevail on a claim of ineffective assistance due to the failure to object to alleged prosecutorial misconduct, a petitioner for post-conviction relief must show an objection would have been sustained if made. *Pruitt v. State*, 903 N.E.2d 899, 928 (Ind. 2009). Further, to prevail on a claim of ineffective assistance due to prosecutorial misconduct, a post-conviction petitioner must show that prosecutorial misconduct in fact occurred. *Id*. A court applies a two-part test in deciding claims of prosecutorial misconduct. *Gasaway v. State*, 547 N.E.2d 898, 901 (Ind. Ct. App. 1989). First, the court must determine whether the prosecutor in fact engaged in misconduct. *Id*. This determination is made by referencing case law and the Rules of Professional Conduct. *Id*. Second, the court must consider whether the misconduct, under the totality of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. *Id*. The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Baer v. State*, 866 N.E.2d 752, 756 (Ind. 2007), *cert. denied*, 552 U.S. 1313 (2008).

Jent maintains that the deputy prosecutor committed prosecutorial misconduct by allegedly falsely commenting on the evidence twice during closing argument. "A prosecutor, in final arguments, can 'state and discuss the evidence and reasonable inferences derivable therefrom so long as there is no implication of personal knowledge

11

that is independent of the evidence.'" *Hobson v. State*, 675 N.E.2d 1090, 1096 (Ind. 1996) (quoting *Kappos v. State*, 577 N.E.2d 974, 977 (Ind. Ct. App. 1991)).

In the State's closing argument, the deputy prosecutor stated that it was Jent's sperm that was found on a shirt that was tested for DNA and that the victim said that Jent used a key to enter the back door of the house where the offenses occurred. The serologist testified that the shirt contained seminal fluid and that analysis of the DNA collected from the shirt matched Jent. The serologist had testified about the distinction between a primary transfer of DNA and a secondary transfer of DNA, and the inference from her testimony was that the DNA collected was not the result of a secondary transfer, and thus, was Jent's. The victim testified that the perpetrator parked behind a house and entered a door using a key. Detective Clement testified that one of the keys seized from Jent opened the back door to the house where the offenses occurred. The gist of the testimony and comment by the prosecutor was that a key was used by the perpetrator to obtain entry to the house, as opposed to a forced entry of the house. Both statements are reasonable inferences drawn from the evidence adduced at trial and do not suggest personal knowledge independent of the evidence. Jent has failed to establish that his trial counsel was ineffective by failing to object, or that the objections would have been sustained if made, as there has been no showing of prosecutorial misconduct here.

Jent claims that his trial counsel's performance was deficient because he failed to object to a stipulation admitting results of DNA testing. He argues that the stipulation presented to the trial court contained a forgery of his signature and that trial counsel should have known it was forged. Jent contends the prejudice he suffered was the waiver of his

right to confront witness Rebecca Tobey ("Tobey"), the DNA analyst who obtained the DNA profile from Jent's known standard. However, as noted by the post-conviction court, Jent did not raise the issue of the alleged forgery at trial, thus failing to alert trial counsel that he should object, did not show that the outcome of his trial would have been affected if Tobey had been subjected to cross-examination about the accuracy of the DNA profile she obtained for Jent, and did not show that the stipulated results were somehow erroneous. Because Jent has failed to meet his burden of establishing his entitlement to relief, the post-conviction court did not abuse its discretion by denying Jent's claim for relief.

Jent further challenges his trial counsel's performance, alleging ineffectiveness for failure to impeach State's witness, Dawn Bowley ("Bowley") about the color of the car from which she saw the victim exit, and about her ability to view the person who exited. Jent claims that Bowley's testimony at trial about the color of the car should have been explored and her testimony impeached by the discrepancies. Bowley's testimony, however, was that although she could not identify with precision the exact color of the car, she was confident that the car was "light colored." *Appellee's Br*. at 18 (citing *Trial Tr*. at 165). The alleged discrepancies in her statements about the exact color of the car were explained in her testimony at trial, *viz.*, "maybe white or tannish, maybe silver. I[t] was dark out so it was hard to say." *Id*. Regarding her testimony about her ability to see the victim, Bowley stated that the little girl was standing at a street corner with her head down, and then "took off real fast across the street and kind of hurried away." *Id*. at 19 (quoting *Tr*. at 164). No evidence was introduced to suggest that Bowley's view of the victim's face was obstructed at all times. Bowley further testified that she spontaneously recognized the

victim as both proceeded to the courtroom for the beginning of Jent's trial. The post-conviction court correctly concluded that Jent had failed to identify discrepancies in Bowley's testimony such that his trial counsel should have impeached her testimony.

Jent also argues that his trial counsel was ineffective for failing to object on the ground that Bowley had violated an order for the separation of witnesses. Jent argued that "witness Dawn Bowley violated the order 'by her presence in the courtroom during victim's testimony and contact with the victim outside the courtroom.'" *Appellant's App*. at 52 (quoting Appellant's petition for post-conviction relief). Jent failed, however, to present any evidence that Bowley was present in the courtroom during S.H.'s testimony. Further, Bowley testified that she merely saw and recognized the victim in the hallway when they were proceeding to the courtroom.

"The primary purpose for separation of witnesses is to prevent them from gaining knowledge from the testimony of other witnesses and adjusting their testimony accordingly." *Harrington v. State*, 584 N.E.2d 558, 562 (Ind. 1992). The post-conviction court correctly found that there was no evidence that a violation of an order of separation had occurred such that Jent was entitled to post-conviction relief. The evidence showed that Bowley saw the victim in the hallway prior to the start of trial. Assuming, *arguendo*, that Bowley's sighting of the victim occurred after the entry of the separation order, there was no evidence that a violation of that order was committed, as no knowledge was gained from testimony such that Bowley's testimony was adjusted. Jent's trial counsel did not perform deficiently.

14

Jent argued to the post-conviction court that his trial counsel rendered ineffective assistance by failing to challenge Juror 53 for cause because she knew one of the witnesses. A juror may be challenged for good cause if that person is biased or prejudiced for or against the defendant. Ind. Code §35-37-1-5(a)(11). In response to initial questions during voir dire, Juror 53 responded that "One of the officers lives in my neighborhood." *Appellant's Br.* at 27 (quoting *Tr.* at 91). The deputy prosecutor determined that the officer was Officer Timothy Stein, who was listed as a witness for trial. The deputy prosecutor then asked Juror 53 "if Officer Stein were to testify, would you give his testimony greater or lesser weight because of the fact that you know him or that he lives in your neighborhood?" *Appellee's Br.* at 20 (quoting *Tr.* at 92). Juror 53 testified that she would not. Officer Stein did not testify at Jent's trial.

Jent has failed to meet his burden of showing his entitlement to relief as a challenge for cause would not have been sustained. Juror 53 testified that the fact that she knew Officer Stein and the fact that he lived in her neighborhood would not influence the weight she would assign to his testimony. Jent has failed to establish that Juror 53 was biased or prejudiced against him. Additionally, because Officer Stein did not testify at trial, Jent has failed to establish that his cause was harmed by his trial counsel's failure to challenge Juror 53's service at trial.

Jent also contends that his trial counsel was ineffective for failing to file a notice of alibi and by failing to investigate potential alibi witnesses. Jent claims that he was present at a garage sale at his mother's house at the time of the sexual assault on S.H. Jent contends that his trial counsel should have produced Jent's mother as a witness at trial.

15

At Jent's trial, however, the State asked Detective Clement if Jent had explained his whereabouts at the time of the sexual assault. Detective Clement testified that Jent said he was at a garage sale at his mother's house on Rotham Road all day until approximately 8:00 or 8:30 p.m. Thus, Jent has failed to establish how his cause was prejudiced by trial counsel's alleged deficient performance since evidence of his alibi was introduced through the testimony of Detective Clement.

Further, Jent has failed to produce evidence that potential alibi witnesses he has identified would have testified as he now suggests. Jent failed to produce affidavits from those witnesses attesting that they would have testified in such a manner. Our Supreme Court has stated the following about this topic:

> As appellant notes, the decision on which witnesses to call generally is a matter of strategy on counsel's part, and we will not second-guess counsel's decision unless the choice fell below objective professional standards. In addition, appellant failed to submit any affidavits showing what the witnesses would have said. Thus we have no idea what the witnesses would have testified about and have no basis to judge counsel's performance. Under the circumstances, we cannot say counsel's performance was ineffective.

*Hunter v. State*, 578 N.E.2d 353, 355 (Ind. 1991) (internal citations omitted). Likewise, we cannot say Jent's trial counsel's performance was ineffective.

Next, Jent advances the argument that his trial counsel was ineffective by failing to obtain expert witnesses. However, issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal. Ind. Post-Conviction Rule 1(8); *Allen v. State*, 749 N.E.2d 1158, 1171 (Ind. 2001). Waiver notwithstanding, Jent's claims fail.

16

Jent's assertions about the testimony of these expert witnesses are premised on the assumption that they would have testified more favorably to him. As was the case with Jent's previous argument, we have no idea what those witnesses might have testified about; therefore, we have no basis upon which to judge his trial counsel's performance. Jent claims that an expert would have testified that the back door was composed of stainless steel, not reinforced steel, as the State's witnesses testified. This would have created a question of fact for the jury to decide, but would not likely have led to a different result. Jent also claims that an expert would have testified that the amylase found on S.H.'s neck, which linked Jent to the attack, was present because of a secondary transfer. This argument would have undermined the defense strategy that there was no reason for Jent's DNA to have been present on S.H.'s neck. Jent contends that counsel should have hired a defense expert to test the State's biological and physical evidence. Yet again, Jent has failed to submit affidavits or other evidence supporting his theory of their testimony. Jent is not entitled to relief on these grounds.

State's Exhibits 61-65 are the subject of Jent's next allegation of ineffective assistance of trial counsel. Jent contends that his trial counsel should have challenged the chain of custody of those exhibits, which he contends was defective. As we stated in *Whaley v. State*, 843 N.E.2d 1, 7 (Ind. Ct. App. 2006), "Merely raising the possibility of tampering with the evidence is an insufficient method of challenging the chain of custody." (quoting *Johnson v. State*, 594 N.E.2d 817, 818 (Ind. Ct. App. 1992)). "[T]he State need not establish a 'perfect' chain of custody, and any gaps impact solely on the weight, not the admissibility, of the evidence." *Id*.

State's Exibit 61 was a plastic bag containing a bottle of lotion. *Appellee's Br.* at 24 (citing *Tr.* at 259). State's Exhibit 62 was an enema box. *Id.* (citing *Tr.* at 261). State's Exhibit 63 was a plastic enema bottle. *Id.* (citing *Tr.* at 263). State's Exhibit 64 was a glass vial containing a clear liquid that was found in the enema bottle. *Id.* State's Exhibit 65 was a collection of rags and a green-and-white striped shirt. *Id.* (citing *Tr.* at 265).

Witnesses for the State testified that the back door appeared as if someone had tried to forcibly enter it. None of the witnesses testified, however, that anyone other than Jent and S.H. entered the house. Thus, Jent's argument amounts to a showing of the mere possibility for tampering existed. Had Jent's trial counsel objected to the admission of those exhibits on those grounds, the objections would have been overruled. The evidence recovered from the crime scene contained Jent's DNA. The possible entry of another unidentified person does not affect that fact. Jent has failed to demonstrate that if those objections had been made, the trial court would have had no choice but to sustain it. *Sanchez v. State*, 675 N.E.2d 306, 310 (Ind. 1996).

Jent also challenges his trial counsel's performance during Jent's sentencing hearing. "Where an issue, although differently designated, has been previously considered and determined upon direct appeal, the State may defend against a post-conviction petition on grounds of res judicata." *Harding v. State*, 545 N.E.2d 14, 17 (Ind. Ct. App. 1989). The State does so here, correctly noting that Jent's sentence was considered on direct appeal under both an abuse of discretion and inappropriateness standard of review. *See Jent v. State*, No. 02A03-0510-CR-512, slip op. at 6-9 (Ind. Ct. App. July 24, 2006), *trans. denied*.

Nonetheless, Jent's claims fail on the merits under an ineffective assistance of counsel designation. Jent asserts that his counsel's performance was deficient because he failed to advance mental illness as a mitigating factor. These factors are considered when determining the weight, if any, that should be given to mental illness in sentencing: 1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; 2) overall limitations on functioning; 3) the duration of the mental illness; and 4) the extent of any connection between the disorder or impairment and the commission of the crime. *Weeks v. State*, 697 N.E.2d 28, 30 (Ind. 1998).

Jent presented no evidence to support his claim that his mental illness was a significant mitigating factor. Jent's pre-sentence investigation report reflects a prior hospitalization for mental illness, but contains no detailed account of the severity of Jent's mental illness, the limitations on his functioning, if any, the duration of his mental illness, or a connection between that prior mental illness and the crimes that are the subject of this appeal. *Appellee's Br*. at 26 (citing *Direct Appeal App*. at 170). No additional evidence was advanced by Jent to the post-conviction court.

Jent also claims that he is entitled to post-conviction relief on this ground because trial counsel failed to present the testimony of any of Jent's family members or that of any character witnesses at Jent's sentencing hearing. Again, Jent failed to tender evidence outlining what the testimony of those witnesses would have been, save for that of his mother, who wrote a letter in which she stated she did not think that Jent was guilty. This, however, is irrelevant to the issue of Jent's mental illness as a mitigating factor.

Jent further claims that his trial counsel should have objected to the State's comment during the sentencing hearing that, because he had a tarp in the trunk of his car, Jent had contemplated killing S.H. *Id.* at 27 (citing *Sent. Tr.* at 4). The State introduced photographs at sentencing depicting the presence of the tarp in the trunk of Jent's car. During the trial, S.H. testified that Jent had warned her to remain silent or he would kill her. Because the State's comment was supported by evidence in the record, an objection to the comment would have been overruled. The post-conviction court properly denied Jent post-conviction relief.

Jent advances several arguments in support of his claim that appellate counsel rendered ineffective assistance. We apply the same standard of review to claims of ineffective assistance of appellate counsel as we apply to claims of ineffective assistance of trial counsel. *Williams*, 724 N.E.2d at 1078.

First, Jent argues that appellate counsel inadequately argued the issue of the sufficiency of the evidence supporting his convictions. A category of appellate ineffectiveness claims allege that although particular issued were raised by counsel, the presentation of those issues was somehow inadequate. *Bieghler v. State*, 690 N.E.2d 188, 195 (Ind. 1997). Where the issues claimed to have been presented inadequately are not deemed waived in the direct appeal, the petitioner faces a much more difficult task in convincing a court on appeal to support his or her claim. *Id.*

Jent claims that his appellate counsel should have more distinctly argued that the evidence supporting his conviction of child molesting as a Class A felony as opposed to a Class B felony was insufficient to show that sexual intercourse occurred. In cases

involving allegations of child molesting, a detailed anatomical description by the victim of what occurred is not necessary. *Spurlock v. State*, 675 N.E.2d 312, 315 (Ind. 1996). Furthermore, given our standard of review, we "must consider only the probative evidence and reasonable inferences supporting the verdict." *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007).

S.H. testified in such a manner exhibiting that she knew the difference between her vagina and her anus, and testified that "He shoved his penis up my butt." *Appellee's Br*. at 30 (quoting *Tr*. at 129). That evidence was clearly sufficient to support Jent's conviction for child molesting as a Class A felony. "Relief is only appropriate when the appellate court is confident it would have ruled differently." *Bieghler*, 690 N.E.2d at 196. Such is not the case here.

Jent also challenges appellate counsel's failure to raise the issue of double jeopardy based upon his convictions for Counts I and VII. Count I alleged that Jent had committed child molesting as a Class A felony by placing his mouth on the victim's vagina. *Appellee's Br*. at 31 (citing *Direct Appeal App*. at 24). Count VII alleged that Jent had committed child molesting as a Class C felony by performing or submitting to fondling with the victim. *Id*. (citing *Direct Appeal App*. at 30).

The Indiana Double Jeopardy Clause provides, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. I, § 14. We analyze alleged violations of this clause pursuant to our Supreme Court's opinion in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). In *Richardson*, our Supreme Court held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to

21

*either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." 717 N.E.2d at 49 (emphasis in original). Under the federal constitution, double jeopardy protects against, *inter alia*, multiple punishments for the same offense. *Whalen v. United States*, 445 U.S. 684, 688 (1980). The initial inquiry for determining whether multiple punishments have been imposed for the same offense is whether the offenses are the same, not whether they spring from the same act. *Elmore v. State*, 269 Ind. 532, 539, 382 N.E.2d 893, 897 (1978). The issue is whether the legislature intended to authorize separate punishment for the two crimes. *Bigler v. State*, 602 N.E.2d 509, 520 (Ind. Ct. App. 1992).

In its closing argument, the State argued that sexual intercourse was necessary to convict Jent of Count I and that in order to convict Jent of Count VII, the jury was to consider evidence of kissing. Thus, it appears from the charging language, the evidence presented at trial, the trial court's instructions, and the State's argument, that the jury did not base the convictions for those two counts on the same facts. Therefore, the post-conviction court correctly denied Jent relief on his claim that appellate counsel was deficient.

Jent maintains that had appellate counsel made a specific argument that his sentence was inappropriate by citing to authority, that this court would have reached a different conclusion upon review. Jent's argument fails because he has failed to show that appellate counsel's poor performance prejudiced him. In our memorandum opinion, we noted that although no specific argument under Indiana Appellate Rule 7(B) had been advanced, we

22

would review Jent's 238-year sentence under that standard nonetheless.

Appellate courts may revise a sentence after careful review of the trial court's decision if they conclude that the sentence is inappropriate based on the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). Jent's appellate counsel presented the issue of sentencing by arguing that the trial court had abused its discretion and we, sua sponte, addressed the issue of the sentence's appropriateness. We conclude that the post-conviction court correctly denied Jent relief on this basis.

Jent further challenges the effectiveness of his appellate counsel by contending that counsel should have challenged on direct appeal the trial court's imposition of consecutive sentences. Waiver of the sentencing issue notwithstanding, the post-conviction court properly denied Jent relief.

A single aggravating factor may support the imposition of both an enhanced and consecutive sentence. *Field v. State*, 843 N.E.2d 1008, 1010-11 (Ind. Ct. App. 2006). The trial court found as aggravating factors, the nature and circumstances of the offense and Jent's prior criminal history. Jent's prior criminal history alone as an aggravating factor would support the imposition of his consecutive sentences. *See Bennett v. State*, 787 N.E.2d 938, 947 (Ind. Ct. App. 2003) (even if improper aggravators considered, criminal history aggravating circumstance supports enhanced sentence). Thus, had Jent's appellate counsel presented this argument on appeal, it would not have succeeded. Jent has failed to establish his entitlement to post-conviction relief.

Affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.